**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-11-0505 |
| | § | (CA. No. C-13-404) |
| ADOLFO PEREZ, | § | |
|     Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE, AND DENYING
CERTIFICATE OF APPEALABILITY**

Before the Court is Defendant Adolfo Perez' (Perez) motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, with exhibits. D.E. 79. The United States filed its combined response and motion to dismiss. D.E. 90. Perez filed a Reply. D.E. 91. The Court ordered the United States to respond with an Affidavit regarding Perez' Brady claim. D.E. 92. The Affidavit was filed, served on Perez who filed a Reply. D.E. 93, 94, 95. After considering the motions, the responses and the evidence, the Court denies Perez' § 2255 claims are denied and he is denied a certificate of appealability.

## I.  PROCEDURAL HISTORY

This is a checkpoint case. Perez was stopped at the Falfurrias Border Patrol Checkpoint in May 2011, when a drug canine alerted to his trailer. Perez gave consent to search. When Border Patrol Agents x-rayed his trailer, they saw anomalies in the load of mixed produce. Upon searching, Agents found bundles of a green leafy substance mixed in the load. The green leafy substance was determined to be marijuana. D.E. 1. Perez was

arrested. Id. Perez denied knowledge of the marijuana. Id. 166 bundles of marijuana were found with a gross weight of 1,743.53 kilograms of marijuana. Id.

Perez made his initial appearance in federal court the same day as his arrest. He retained counsel and was granted bond after a detention hearing. D.E. 2, 5, 6. Perez was indicted later the same month, for possession with intent to distribute more than 1000 kilograms of marijuana (1477.93 kilograms) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). D.E. 7. He was arraigned on May 27, 2011. Counsel moved for a continuance of the plea date and trial for at least thirty days. D.E. 11. The motion was granted and the deadlines were extended approximately 30 days. D.E. 12. Approximately two weeks before the new trial setting, the Court granted Perez' motion to substitute different retained counsel. D.E. 15.

Trial began on July 26, 2011, and lasted through July 27, 2011. D.E. 58-60. Perez was convicted on the single count of the indictment.

The Probation Department calculated Perez' base offense level of 32 based upon the net weight of the marijuana, 1477.93 kilograms. U.S.S.G. § 2D1.1(c)(1). The Probation Department included a two level increase for obstruction of justice based upon Perez' trial testimony for a total offense level of 34. D.E. 32, ¶¶ 11-21. Perez' criminal history category was  II. Id., ¶¶ 23-26. The resulting sentencing guideline range was 168-210  months, with a minimum mandatory sentence of ten years. Id., ¶¶  42-43, citing 21 U.S.C. § 841(b)(1)(A).

The Court sustained the defense objection to the obstruction of justice enhancement. D.E. 61, pp. 4-8. Perez was sentenced based upon a revised guideline range of 135-168 months. Id. at 8. The Court sentenced Perez to 144 months in the Bureau of Prisons, to be followed by five years supervised release and was ordered to pay a special assessment of $100. D.E. 35. Perez' retained counsel moved to withdraw, but assisted Perez with filing his notice of appeal and application to proceed *in forma pauperis*. D.E. 61, pp. 12-13. The Court granted the application and appointed appellate counsel. D.E. 45, 46.

On appeal, Perez challenged the sufficiency of the evidence to prove that he knowingly possessed the marijuana. United States v. Perez, No. 11-41200, 488 Fed. App'x. 841 (5th Cir., Sept. 12, 2012) (per curiam) (designated unpublished). The Fifth Circuit Court of Appeals described the evidence as follows,

> Perez testified that after picking up a load of perishable produce in Texas, he stayed in his truck overnight so that he could have sufficient time off to be able to transport his cargo to Memphis, Tennessee, and then to immediately transport another load to his hometown of Denver, Colorado. However, the jury could have found it implausible that Perez would waste the time and fuel—his trailer was refrigerated—waiting until the following morning to set out, especially because Perez had already had at least two nights and two days of downtime in Texas.
>
> The jury also could have found implausible Perez's statement that the employees at the produce warehouse gave him the seal that was on his trailer when he arrived at the checkpoint. Warehouse employees testified that it was their practice to personally put the seals on trucks when requested and that they did not give Perez a seal or put one on his truck. Moreover, the seal number did not appear on Evergreen's copy of the bill of lading and the seal did not resemble the type of seal used by the warehouse. As witness testimony and video evidence showed, Perez lied to agents when he told them that he spent the night in the warehouse parking lot. Significantly, at the time of trial, Perez changed his story, testifying that he spent the night at a truck stop, across

the street from the warehouse.

Additionally, the three million dollar value of the drugs also suggests that Perez had guilty knowledge; as we have explained, it is unlikely that a drug smuggler would entrust such valuable cargo to an unsuspecting person. See United States v. Villarreal, 324 F.3d 319, 324–25 (5th Cir. 2003).

Other evidence also supported the finding that Perez knew he was transporting drugs. Video recordings and testimony from the warehouse workers confirmed that only produce was loaded in the trailer at the warehouse, and there was no evidence that anyone other than Perez had control of the trailer from the time it left the warehouse until the marijuana was found. In light of all of the evidence, it was reasonable for the jury to conclude that after the produce was placed in the trailer, Perez had marijuana loaded into the trailer at a different location and then placed a seal on the trailer. The jury was free to choose among reasonable constructions of the evidence and reject the defense offered by Perez. See Matachewan, 646 F.3d at 285. Moreover, it was not required to accept Perez's explanations and was permitted to make its own assessment of the credibility of the witnesses. See id. at 286; United States v. Camilla, 20 F.3d 600, 602 (5th Cir. 1994).

Perez also argues that the Government failed to prove that he had knowledge of the type and quantity of the controlled substance that he possessed. As Perez acknowledges, however, this argument is foreclosed by United States v. Becancour, 586 F.3d 303, 308–09 (5th Cir. 2009), which reaffirmed the holding in United States v. Game–Gonzalez, 319 F.3d 695, 700 (5th Cir. 2003), that knowledge of drug type and quantity is not an element of possessing with intent to deliver a controlled substance.

Id. at 842-43. After the Fifth Circuit affirmed his conviction, Perez filed a petition for writ of certiorari. It was denied. D.E. 74. Perez then timely filed his present motion.

## II. MOVANT'S ALLEGATIONS

Perez complains that his counsel provided ineffective assistance at every level of the proceedings. D.E. 79. Initially he claims that counsel 1) prevented Perez from accepting a favorable plea offer by failing to communicate the full extent of the formal plea offer, 2)

counsel did not inform Perez that there was a deadline to accept the plea, 3) Perez would have accepted the plea offer had counsel provided all relevant facts including the downward departures he would have received by pleading guilty, 4) Perez told counsel he would have accepted a plea offer, and 5) counsel informed Perez he had never done a federal appeal and did not understand federal law. Id., p. 4.

Next, Perez claims that his trial and appellate counsel failed to raise a Brady issue when the government allegedly withheld the criminal history of a government witness. Id., pp. 5, 8. Finally, Perez complains that this Court's jury selection procedures deprived him a fair voir dire because the Court selected prospective jurors from both Panel A and Panel B without giving Perez the opportunity to challenge all of the jurors on Panel A. By mixing the two panels, Perez claims the Court systematically excluded women, Hispanics and African-Americans from his voir dire proceeding. Id., p. 8.

Perez' Reply and sur-reply claim that trial counsel was ineffective because he failed to object to the lack of a fair jury selection process. D.E. 91, p. 5. Perez' final filing (D.E. 95) complains that the affidavit of AUSA Watt is not proper evidentiary support for the government's position. Id., pp. 1-2.

## III.  ANALYSIS

### A.     28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

### B.     Standard for Claims of Ineffective Assistance of Counsel

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant

6

must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999) (citing Evicts v. Luce, 469 U.S. 387, 394 (1985); Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir.1998)). Counsel's appellate performance is judged under the same Strickland, standard applicable to trial performance. 466 U.S. 668 (1984). "When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.'" United States v. Reinhard, 357 F.3d 521, 530 (5th Cir. 2004) (quoting United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000)).

**C.      Counsel's Alleged Failure to Advise Perez of the Benefits of a Plea Agreement**

Perez complains that both his original counsel and his trial counsel provided ineffective assistance on the following grounds: counsel failed to fully explain the plea offer by the government, the benefits of accepting the plea, and failed to convey the applicable deadline to enter into a plea agreement. A defendant has a Sixth Amendment right to counsel that "extends to the plea-bargaining process." Lafler v. Cooper, — U.S. ----, 132 S.C. 1376, 1384 (2012). A defendant is entitled to the effective assistance of competent counsel during plea bargaining. Id.

Perez' original defense counsel and his trial counsel submitted detailed affidavits. D.E. 89, 90-1. Between them and other evidence in the record, the Court finds that Perez was advised of the government's proposed plea agreement, advised of the sentencing advantage from a guilty plea through acceptance of responsibility and further advantages if he debriefed and also if he cooperated. With acceptance of responsibility, Perez' sentencing range would have been 121 to 151 months with a statutory minimum sentence of 120 months. The projected sentencing ranges did not take into account Perez' criminal history.

Perez' claim that he was not informed of the deadline to enter a guilty plea with plea agreement is negated by original counsel's joint motion to continue the deadlines which represented to the Court, in part, "Discovery matters and plea negotiations are on-going. Defendant requests additional time of at least thirty (30) days to complete discovery, complete plea negotiations and/or prepare for trial. Counsel for defendant has discussed this continuance with AUSA Lance Watt, who does not oppose this continuance and joins in the

request." D.E. 11.

Perez also claims that he told his counsel that he would accept a favorable plea agreement. The contemporaneous documents from the time before trial reflect that the government offered Perez a standard plea agreement, that Perez knew about the offer and he rejected it.

## D.   **Brady Claim**

Perez claims that the government witness Andres Zuniga, the owner of Evergreen Cold Storage, was a convicted felon and the government withheld the evidence of his criminal conviction from the defense in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).[1] Trial counsel and the prosecuting AUSA agree that the government disclosed Zuniga's identity before trial and disclosed that Zuniga was once arrested in a drug trafficking conspiracy, but was never indicted.

Because there was no <u>Brady</u> violation, neither trial counsel nor appellate counsel could have been ineffective for failing to raise a <u>Brady</u> issue.

## E.   **Allegedly Unfair Jury Selection**

Perez also claims that the process of jury selection was unfair. The Court scheduled voir dire on two different criminal cases simultaneously with two different panels. Panel A

---

[1] "To prevail upon his Brady claim, [a defendant] must establish that: (1) the prosecution did not disclose evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material—*i.e.*, there is a reasonable probability that if the government had disclosed the evidence, the result of the proceeding would have been different." <u>United States v. Infante</u>, 404 F.3d 376, 386 (5th Cir. 2005) (citing <u>Lawrence v. Lensing</u>, 42 F.3d 255, 257 (5th Cir. 1994)).

9

was for the Perez case which was to be tried first. Panel B was for another case that would be tried at the conclusion of the Perez case. The Court conducted a general and case specific voir dire. There were no challenges for cause by the parties. D.E. 58, p. 55. The parties exercised their strikes and the jury was seated, 12 jurors and two alternates. Id., pp. 56-57.

Perez claims that Hispanics, African-Americans, and women were excluded from voir dire. D.E. 79, p. 8. Perez does not identify any particular juror who was excluded or on what basis. His complaint is not based upon any specific facts. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. United States v. Woods, 870 F.2d 285, 288 n. 3 (5th Cir.1989); see also United States v. Jones, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim.").

Perez also claims that the Court selected persons from Panel B to serve on his jury. A review of the record reveals that no members from Panel B were present when the jury was selected after the parties exercised their peremptory strikes.  D.E. 58, p. 32-33.[2]

Perez next claims that he did not get a chance to challenge all of the jurors on Panel A. The Court understands this to be a complaint that peremptory challenges could be used

---

[2]     24 All right. I'm going to excuse at this time Panel A
        25 because Panel A is my Perez jury and we're going to go to trial
        1 in that case this morning. So you're going to be able to go
        2 back downstairs to the second floor and we'll call you back up
        3 here in a minute and we're going to pick that jury.

Id.

10

only through Juror 33.[3] The Court accepted the first 14 jurors to which there was no objection. Defense counsel used his peremptory challenges on those jurors who were within the range of being selected. None of the remaining jurors served.

Jury selection was not unfair. Perez' complaint is without merit, as is his complaint that trial and appellate counsel should have objected or challenged jury selection on appeal on the grounds that it was unfair.

## IV.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Perez has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment

---

[3]    10 THE COURT: Thank you. So we pick our jury through
11 Juror 29.
12 THE CLERK: Correct.
13 THE COURT: So you exercise your ten and your six
14 through 1 through 29 and then we have -- need two alternates.
15 So exercise one more challenge in Jurors 30 through 33.
16 MR. WATT: Yes, your Honor.
17 MR. LONGORIA: Yes, sir.
18 THE COURT: Okay, thank you.

Id., p. 56.

of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. <u>United States v. Jones</u>, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon <u>Slack</u>, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Perez is not entitled to a COA on any of his claims. Reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. <u>See</u> <u>Jones</u>, 287 F.3d at 329.

## V.  CONCLUSION

For the foregoing reasons, Perez' motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 79) is DENIED. He is also denied a Certificate of Appealability.

ORDERED this  17th day of July 2014.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE